**In re Anonymous No. 109 D.B. 90**

Disciplinary Board Docket no. 109 D.B. 90.

To the Honorable Chief Justice and Justices of the Supreme Court of Pennsylvania:

POWELL, *Member,* April 30, 1992—Pursuant to Rule 208(d)(2)(iii) of the Pennsylvania Rules of Disciplinary Enforcement, the Disciplinary Board of the Supreme Court of Pennsylvania herewith submits its findings and recommendations to your honorable court with respect to the above-captioned petition for discipline.

## HISTORY OF PROCEEDINGS

On October 22, 1990, the Office of Disciplinary Counsel filed a petition for discipline of respondent. The petition contained numerous allegations of Disciplinary and Professional Conduct Rules violations based on respondent's handling of an estate matter.

Respondent filed an answer to the petition on November 22, 1990, at which time she admitted many of the allegations charged by the Office of Disciplinary Counsel.

The matter was referred to Hearing Committee [ ], which was chaired by [ ], Esquire, and included [ ], Esquire, and [ ], Esquire. The committee held a hearing on the matter on January 4, 1991, at which time petitioner introduced 19 exhibits and presented several witnesses. Neither respondent nor her counsel attended the hearing or has responded to the charges in any way since the

November 1990 filing of the answer to the petition for discipline.

On February 13, 1991, the Office of Disciplinary Counsel submitted a brief to Hearing Committee [　] and requested that respondent be suspended from the practice of law for a period in excess of one year.

The Hearing Committee filed its report on June 25, 1991, and recommended that respondent be suspended from the practice of law for 15 months.

The matter was adjudicated at the July 26, 1991, meeting of the Disciplinary Board of the Supreme Court of Pennsylvania.

## FINDINGS OF FACT

(1) Petitioner, whose principal office is located at 300 North Second Street, Harrisburg, Pennsylvania, is invested, pursuant to Rule 207 of the Pennsylvania Rules of Disciplinary Enforcement, with the power and the duty to investigate all matters involving alleged misconduct of an attorney admitted to practice law in the Commonwealth of Pennsylvania and to prosecute all disciplinary proceedings brought in accordance with the various provisions of the aforesaid Rules.

(2) Respondent was born in 1952, and admitted to the bar of the Commonwealth of Pennsylvania in 1980. She is currently a resident of the, state of [　].

(3) On August 12, 1987, [A], a resident of [　] County and holder of both real and personal property, died testate. [A's] will bequeathed $5,000 to each of his grandchildren $100 each to two of his sons, and the residue in equal shares to his other two sons, [B] and [C].

(4) On August 19, 1987, letters testamentary were granted to respondent as the denominated alternate executrix. (Respondent was also attorney for the estate at the time.)

(5) [B] gave respondent certificates of deposit which he had jointly held with his father. The total amount of property, which also included survivorship and checking accounts, held jointly by [A] and [B] was approximately $111,000.

(6) Respondent erroneously split the proceeds of the jointly held account between [B] and the estate.

(7) Subsequent to decedent's death, four additional income/interest checks payable to both [A] and [B] were issued. Respondent again split the proceeds of two of the checks between [B] and the estate, and failed to negotiate the other two.

(8) On November 9, 1987, respondent filed an inheritance tax return on behalf of the estate which contained the following errors: an incorrectly calculated discount rate; improperly excluded jointly held assets transferred within one year of decedent's death; failure to use date-of-death values; and failure to utilize the $3,000 exemption available under 72 Pa.C.S. §1707(c)(3), which applies to assets transferred within one year of decedent's death.

(9) Respondent improperly used $5,013.34 of estate funds to make an inheritance tax payment when in fact the tax obligation was the responsibility of the surviving joint tenant, not the estate.

(10) On December 16, 1987, [B] and [C] filed suit against respondent in the Court of Common Pleas in order to have respondent removed as executrix of the estate

and receive all estate funds in respondent's possession and an accounting thereof.

(11) Pursuant to stipulation and court orders of March 1, 1988, respondent was ordered to resign as attorney and executor of the [A] estate; return the proceeds of the jointly held assets to the [B and C] attorney; file an inventory and individual accounting before April 1, 1988; acknowledge no fee was due; and return $11,701.84 she had been paid for her services to the estate.

(12) Respondent's insurance carrier was ordered to remit $4,300 (to cover the cost of correction, penalties and lost income) to the estate in accord with the March 1, 1988, court order. A check dated March 22, 1988, and containing the restrictive endorsement "settlement of any and all claims," was remitted to [B] and [C] and their attorney. The restrictive endorsement was later remitted by letter dated September 6, 1988.

(13) Respondent remitted a check to [B and C] attorney for $11,701.84 which also contained a restrictive endorsement and was returned to respondent.

(14) By letter dated October 11, 1988, the [B and C] attorney provided respondent's counsel with a letter stating that the [B and C] and respondent had reached a compromise concerning the estate.

(15) Respondent had failed to tender the $11,701.84 she owes the estate.

(16) Because respondent no longer possessed the funds which belong to the estate, she has offered equity in property she owned in [ ] County with her husband, which the estate declined.

(17) On or about June 23, 1989, a contempt order was issued as a result of respondent's failure to comply with the March 1, 1988, order.

(18) Although respondent received notice of the instant disciplinary proceedings, she has chosen not to reply, with the exception of her initial answer to the petition for discipline.

## CONCLUSIONS OF LAW

Respondent, by virtue of her aforementioned misconduct, has violated the following Disciplinary and Professional Conduct Rules:

(1) D.R. 1-102(A)(4)—dealing with a lawyer engaging in conduct involving dishonesty, fraud, deceit or misrepresentation;

(2) D.R. 1-102(A)(6)—dealing with conduct that adversely reflects on a lawyer's fitness to practice law;

(3) D.R. 6-101(A)(1)—prohibiting a lawyer from handling a legal matter which she knows or should know that she is not competent to handle, without associating with her a lawyer who is competent to handle it;

(4) D.R. 9-102(B)(4)—requiring a lawyer to promptly pay or deliver to a client as requested by the client the funds, securities or other properties in the possession of the lawyer which the client is entitled to receive;

(5) RPC 8.4(c)—a lawyer shall not engage in conduct involving dishonesty, fraud, deceit or misrepresentation; and

(6) RPC 1.15(b)—upon receiving funds or other property in which a client or third person has an interest, a lawyer shall promptly notify the client or third person.

## DISCUSSION

There are two issues immediately before the Disciplinary Board. The first question is what Disciplinary and Professional Conduct Rules were violated by respondent as a result of her mishandling of the [A] estate. It is incumbent upon petitioner to prove misconduct by a preponderance of clear and satisfactory evidence. *Office of Disciplinary Counsel v. Keller,* 509 Pa. 573, 506 A.2d 872 (1986). The second point of inquiry is the appropriate discipline to be imposed in light of these transgressions.

The gravamen of the petition for discipline is that respondent undertook an estate matter she was clearly incompetent to handle and proceeded to engage in dishonest conduct, which reflected adversely on her fitness to practice law, as a result. The extensive documentary and testamentary evidence presented by the Office of Disciplinary Counsel, which included: a certified copy of the deposition of respondent taken on behalf of the estate whose affairs she mismanaged; certified copies of the erroneous inheritance tax return filed by respondent and court order mandating her return of unearned fees to the estate; and testimony of the complainants and their attorney, demonstrate respondent's gross mishandling of the [A] matter.

The evidence shows that respondent lacked the requisite legal knowledge to file a proper inheritance tax return and render advice on the survivorship rights of property held in joint tenancy. The record also contains an order issued by the Court of Common Pleas of [ ] County directing respondent to reimburse the [A] estate for a fee she paid herself based on her improper calculations, which had greatly inflated the value of the estate. Finally,

the record demonstrates that respondent has failed to satisfy her debt to the estate.

Both the documents and the testimony presented by petitioner constitute clear and satisfactory proof that respondent engaged in unprofessional conduct. Respondent's erroneous legal advice to the [B and C] concerning the distribution of property held in joint tenancy, as well as her failure to surrender a fee she herself has admitted is not rightfully hers, violate D.R. 1-102(A)(4) and RPC 8.4(c) because such conduct is fraudulent, dishonest, deceitful and entails misrepresentation.

Respondent's failure to file a correct inheritance tax return, her mismanagement of the jointly held assets, and her incorrect statement of the law regarding survivorship rights all lead to the conclusion that she undertook a legal matter she was not competent to handle, in violation of D.R. 6-101(A)(1).

Respondent's failure to surrender funds totaling $11,701.84 she had collected based on her incorrect calculations of the value of the estate, despite court order and her own acknowledgment that such monies belonged to the [B and C], constitutes a violation of D.R. 9-102(B)(4) and RPC 1.15(b), which require an attorney to deliver property which rightfully belongs to and is requested by the client and in the custody of the lawyer.

All of these actions adversely reflect upon respondent's fitness to practice law, and are, therefore, in violation of D.R. 1-102(A)(6).

Having decided respondent violated the aforementioned Disciplinary and Professional Conduct Rules, we must now impose a measure of discipline which will adequately protect the interests of the public and uphold the integrity

of the bar. *See Office of Disciplinary Counsel v. Stern,* 515 Pa. 68, 526 A.2d 1180 (1987).

A close examination of the record reveals an attorney who erroneously undertook a legal matter she was incompetent to handle and created a situation which was compounded by her inability to promptly rectify since she had already spent a fee she believed she had earned. It is abundantly clear to us that this case involves incompetence and not the intentional conversion of client funds. We are aware of respondent's attempt to satisfy her debt to the [B and C] by offering them an interest in real property since she lacked the cash necessary to repay the estate.

However, respondent's mishandling of the [A] estate matter does constitute serious professional misconduct and warrants suspension from the bar. The Office of Disciplinary Counsel has requested that respondent be suspended from the practice of law for a period in excess of one year. Hearing Committee [    ] has recommended that respondent be suspended for 15 months.

It is our conclusion that a 15-month suspension is the appropriate discipline for respondent since it will adequately protect the interests of the public and the bar, reflect the seriousness of the misconduct, and require respondent to prove her fitness before she may resume the practice of law.

## RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania respectfully recommends that respondent [    ] be suspended from the practice of law for a period of 15 months.

It is further recommended that the court direct that respondent pay all the necessary expenses incurred in the investigation and processing of this matter pursuant to Rule 208(g), Pa.R.D.E.

Messrs. Keller and Paris did not participate in the adjudication.

## ORDER

And now, April 30, 1992, upon consideration of the report and recommendations of the Disciplinary Board dated October 8, 1991, it is hereby ordered that [respondent] be and she is suspended from the bar of this Commonwealth for a period of 15 months, and she shall comply with the provisions of Rule 217, Pa.R.D.E. It is further ordered that respondent shall pay costs to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.

Mr. Justice Papadakos dissents and would issue a rule to show cause why respondent should not be disbarred.